,VAN WIE and another, Respondents, vs. SOUTHERN WISCONSIN POWER COMPANY, Appellant.

*February 1—February 20, 1912.*

*Dams: Flowage of land: Measure of damages: Market value: Adaptability to business uses: Profits: Evidence: Instructions to jury: Excessive damages.*

1. In determining the damage to land from the flooding of a part thereof by means of a dam, evidence of the profits of a business theretofore conducted on the land is not competent to establish the market value of the land; but evidence of the adaptability of the land to business purposes is admissible and proper to be considered.

2. The lands flooded in this case were of an unusual character, being located at the broadening of a ravine or canyon of scenic beauty, frequented by tourists, and improved by a building which had been used as a restaurant, boarding house, etc. The witnesses testifying as to the value of the land took into consideration that the business conducted there would produce an income, but, although they did not use the words "profits" and "income" with strict nicety, did not base their estimates of value on the actual profits that had been or were expected to be realized from such a business. The court explicitly instructed the jury to find as the measure of damages the difference, if any, in the market value of the property before and after flowage, and told them that they could not allow any sum for any injury to the business conducted on the land, and that in fixing the market values they could not assess any sum for remote or speculative values or consider any speculative or remote use to which the property might be put. *Held*, that there was no error prejudicial to the defendant in the admission of such testimony and submission thereof to the jury.

3. An award of $4,500 for the injury to plaintiffs' land by the flowage thereof is *held* not excessive as a matter of law.

'APPEAL from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge.   *Affirmed.*

The plaintiffs, mother and son, own a triangular piece of land, about eight acres in extent, near the Wisconsin river, above the village of Kilbourn City, Adams county, Wisconsin.

Plaintiffs' land is separated from the river by a strip of land about 300 feet wide owned by the defendant. Extending from the river across defendant's and the plaintiffs' land is a deep, irregular, rocky ravine known as Cold Water Canyon. The sides of the canyon are steep, covered with ferns, shrubs, and trees, and are of great scenic beauty. Along the bottom of the canyon flows a small stream of spring water. The canyon is narrow except in one place on plaintiffs' land, near the boundary between it and the defendant's land, where it is broadened out to a width of 100 to 125 feet. The area of this wide portion of the bottom is about two and one-half acres. Upon that part of the spread nearest to the defendant's land there is located a building, which during and prior to 1907 was used as a restaurant and boarding house, and here soft drinks, peanuts, souvenirs, etc., were sold to tourists passing up and down the canyon. A dancing pavilion, ice house, etc., had also been constructed and were used for the entertainment of tourists. · This level spread of the bottom of the canyon is from thirteen to fourteen feet above the normal level of the water of the Wisconsin river at the mouth of the canyon. Tourists visiting the plaintiffs' premises in the canyon usually came through Cold Water Canyon from the river, but access thereto could be had by rights of way to the river and the public highway which were owned by the plaintiffs. The spread in the canyon had no value for agricultural purposes; its value arose from the fact that it was the only place in the canyon where buildings could be constructed for the entertainment of tourists and because a toll might be charged tourists for passing through this portion of the canyon. The tourist season to the Dells of the Wisconsin, with which Cold Water Canyon is connected, is during the months of June, July, and August. Since 1907 the plaintiffs have not conducted their business in the canyon.

The defendant corporation has erected and maintains under state and federal authorization a dam for power purposes

across the Wisconsin river, some distance below the mouth of Cold Water Canyon. The completed dam is designed to raise the normal level of the water of the river at the mouth of the canyon fourteen feet. The work was commenced in September, 1907, and completed in July, 1909. In 1908 the backed-up water began to overflow the plaintiffs' land, and the buildings are now normally surrounded by from six to twelve inches of water.

The action was commenced before the construction of the dam was begun, by a petition of the defendant for the appointment of commissioners to appraise the damages to be awarded the plaintiffs by reason of the flowage upon the lands of the plaintiffs because of the construction of the dam. Under stipulation the appeal from the award of the commissioners was tried before the Sauk county circuit court. There was evidence that the value of plaintiffs' entire property was from $8,000 to $12,000 before the flowage and that its value was almost entirely due to the adaptability of the spread in the canyon for carrying on a business as above described, and that its value after the flowage was from $500 to $8,000. There was evidence tending to show that the water backed up onto plaintiffs' land was stagnant, that this rendered the canyon unattractive to tourists, and that it was impracticable to remove the buildings to higher ground and there carry on the business. In behalf of the defendant there was evidence that except in times of flood or high water only about six tenths of an acre of plaintiffs' land was overflowed by reason of the construction of the dam, that the buildings could be removed to higher ground, and that the damage to plaintiffs' property because of the flooding by the dam was from $300 to $500.

This is an appeal from the judgment on the verdict awarding plaintiffs $4,500 as the damages caused them by the construction of the dam.

For the appellant there were briefs by *Jones & Schubring* and *F. R. Bentley,* and oral argument by *Mr. E. J. B. Schu-*

*bring* and *Mr. Bentley.* They cited Lewis, Em. Dom. (3d ed.) § 727 (487); *In re Dept. Pub. Works,* 53 Hun, 280, 6 N. Y. Supp. 750; *De Buol v. F. & M. R. R. Co.* 111 Ill. 499; *Cobb v. Boston,* 109 Mass. 438; *Cox v. P. H. & P. R. Co.* 215 Pa. St. 506, 64 Atl. 729; *Reading & P. R. Co. v. Balthaser,* 126 Pa. St. 1, 13 Atl. 294, 17 Atl. 518; *San Diego L. & T. Co. v. Neale,* 88 Cal. 50, 25 Pac. 977; *Hamilton v. P., B. & L. E. R. Co.* 190 Pa. St. 51, 42 Atl. 369; *Jacksonville & S. E. R. Co. v. Walsh,* 106 Ill. 253; *Cook & R. Co. v. Sanitary Dist.* 177 Ill. 599, 52 N. E. 870; *Dupuis v. C. & N. W. R. Co.* 115 Ill. 97, 3 N. E. 720; *Sacramento S. R. Co. v. Heilbron,* 156 Cal. 408, 104 Pac. 979; *Edwards v. Cheyenne* (Wyo.) 114 Pac. 677; *Munkwitz v. C., M. & St. P. R. Co.* 64 Wis. 403, 25 N. W. 438; and other cases.

For the respondents there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *H. H. Thomas.*

SIEBECKER, J. It is contended that the court erred in submitting to the jury evidence of the profits of the business carried on upon the property in question. It is not questioned that evidence of the profits of a business conducted upon the land in question before the alleged flowage is not competent to establish the market value of the land, nor is there dispute between the parties that evidence of the adaptability of the land for business purposes is a consideration which goes to show the value and is properly to be submitted to a jury to ascertain the damages to land from flooding a part thereof. This latter element of value is entirely distinct from the former and is proper to be considered in estimating the value of such land before and after flowage. It is strenuously contended that the opinion of the plaintiffs' witnesses as to the value of this property is shown to have been based upon the profits of the business theretofore conducted on this land and that such evidence was incompetent and operated to the prejudice of the defendant. The court by special ques-

tion submitted to the jury the inquiry of finding the difference in market value of the land in question before and after the construction of the dam causing the flowage, and in connection therewith explicitly informed the jury that the difference in the market value of the property before and after the flowage, if any, constituted the damage caused thereby to the land, and directed them that "In fixing this market value you cannot allow any sum for any injury that may have resulted to the business that the plaintiffs conducted on the land," and also, "In fixing this market value you cannot assess any sum for remote or speculative values, or consider any speculative or remote use to which the property might be put." It is manifest that the court properly limited the jury to a consideration of the evidence on the question of market value. Treating the evidence received in the light of this inquiry, can it be said that the witnesses based their estimates of value on the profits realized in the business that had been conducted on the premises? The evidence shows that the witnesses took into consideration that the business conducted there would produce an income. Though the witnesses, in phrasing their testimony, did not use the words "profits" and "income" with strict nicety, yet it is plain that in giving their estimates of the value of this land they meant and included in their estimates of value the element of the adaptability of the lands for conducting a profitable business thereon of the nature of that which had been conducted on the premises; but the evidence does not warrant the claim that such estimates were based on the actual profits that had been realized or that were expected to be realized from such a business. We are persuaded that the jury under the instructions and directions of the court understood correctly the bearing of such evidence and were not misled to the prejudice of the appellant, and that no error was committed in submitting this evidence to the jury. The property in question is of an unusual character and is restricted in its uses for business purposes, and its

market value depends in a material degree upon the nature and kind of business that could be successfully conducted thereon. These conditions made its adaptability for profitable business purposes an essential and proper consideration to be taken into account by the witnesses in giving their opinions of its market value. These facts also had an important bearing on the question for determination by the jury, namely, the amount of damages sustained by the plaintiffs on account of the alleged flowage. Under the facts and circumstances shown it is clear that this inquiry, of necessity, calls for the exercise of judgment by a jury and hence is an inference to be drawn by them from the facts and circumstances.

We cannot say as matter of law that the damages awarded are excessive. There is no room for argument that the witnesses were not qualified to give their opinions as to the value of the property nor for the claim that the market value of the property was but slightly affected by the flowage because plaintiffs could readily remove their buildings to other points on the premises and continue their business. These questions were within the jury's field and must be held to have been properly determined by them.

The claim that the premises were within the limits of ordinary high- and low-water mark is not sustained by the evidence.

The alleged improper remarks of counsel in argument to the jury are not set out in the record, nor can they be held, if made as claimed in oral argument, to have affected the substantial rights of the parties.

*By the Court.*—Judgment affirmed.

KERWIN, J., took no part.